UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>FIDEL ARAMBOLES,<br>                                        Defendant. | 23-cr-643 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

The government alleges that during a car stop on May 27, 2023, officers found a Bersa Thunder 380 pistol in Fidel Aramboles's possession. Dkt. 1 ¶ 3. The government also says that Aramboles has four prior felony convictions related to weapons and narcotics. ¶ 4. Aramboles was indicted on one count of possessing a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Dkt. 9. Aramboles moves to dismiss the indictment. He argues that § 922(g)(1) is unconstitutional, invoking the Second Amendment. For the following reasons, Aramboles's motion is DENIED.

## LEGAL STANDARD

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Supreme Court has interpreted the Second Amendment to "protect[] the right to possess a handgun in the home for the purpose of self-defense." *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010); *see also District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008).

More recently, in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court reaffirmed that the Second Amendment protects "an individual right to keep and bear arms for self-defense." *Id.* at 17. But the Court clarified the test for evaluating the constitutionality of a regulation: "[W]hen the Second Amendment's plain text covers an individual's conduct," a regulation of that conduct may be upheld only if the government demonstrates that the "regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 18.

Section 922(g)(1) criminalizes the possession of a firearm by individuals who have been convicted of a felony. In 2013, the Second Circuit affirmed the constitutionality of § 922(g)(1) in *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013). The Second Circuit noted that neither *Heller* nor *McDonald* "cast[s] doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 281 (quoting *Heller*, 554 U.S. at 626). The Second Circuit has not issued any decisions regarding the constitutionality of § 922(g)(1) since *Bruen*.

## DISCUSSION

Aramboles argues that the Second Amendment applies to him and, under *Bruen*, § 922(g)(1) is unconstitutional.

However, the Court remains bound by *Bogle*, in which the Second Circuit upheld the constitutionality of § 922(g)(1). The Court must follow *Bogle* "unless it would be impossible to comply with both its commands and those of the Supreme Court" in *Bruen*. *Augenbaum v. Anson Invs. Master Fund LP*, 2024 WL 263208, at *4 (S.D.N.Y. Jan. 24, 2024). Here, the Court holds that *Bogle* and *Bruen* can be reconciled.

Indeed, the Supreme Court has repeatedly endorsed felon disarmament laws as consistent with the Second Amendment. First, in *Heller*, the Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626. And two years later in *McDonald*, a plurality of the Court "repeat[ed *Heller*'s] assurances." 561 U.S. at 786. It was this precedent that *Bogle* applied when it upheld the constitutionality of § 922(g)(1). *See* 717 F.3d at 281.

*Bruen* is also consistent with *Bogle*. *Bruen* disavowed "means-end scrutiny in the Second Amendment context," in favor of an analysis focused on "historical tradition." 597 U.S. at 18. But *Bogle* did not apply a means-end analysis. It emphasized (just as *Heller* did) that felon disarmament was a "longstanding prohibition[]." 717 F.3d at 281. Moreover, *Bruen* did not cast doubt on the constitutionality of these laws. The majority stated that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality of . . . shall-issue regimes, which often require applicants to undergo a background check . . . [and] are designed to ensure only that those bearing arms in the jurisdiction are, in fact, *law-abiding, responsible citizens*." 597 U.S. at 38 n.9 (emphasis added) (citation omitted). Three members of the *Bruen* majority also wrote or joined separate opinions emphasizing the constitutionality of felon disarmament laws. *See id.* at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm . . . . Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80–81 (Kavanaugh, J., concurring, joined by Roberts, C.J.) ("Properly interpreted, the Second Amendment allows a variety of gun regulations," including the "longstanding prohibitions on the possession of firearms by felons" described in *McDonald* (citations omitted)).

Aramboles suggests that the Court is not required to follow *Bogle* because it "was a one-paragraph decision that cited no historical research and relied entirely on dicta from *Heller* and *McDonald*." Dkt. 12 at 6. But as already explained, *Bogle* properly relied on the "longstanding prohibitions" of felon disarmament, rather than the means-end analysis that *Bruen* foreclosed. 717 F.3d at 281. And the Court is not otherwise free to ignore *Bogle* because of its length. Instead, the question is whether *Bruen* and *Bogle* are irreconcilable, and the Court holds that they are not.

In short, the Second Circuit affirmed the constitutionality of § 922(g)(1) in the wake of the Supreme Court's decisions in *Heller* and *McDonald*. And *Bruen* did not disrupt things in a way that would permit this Court to ignore *Bogle*'s clear dictate. So the Court agrees with the many

other courts in this District that have held that *Bogle* remains binding. *See, e.g.*, *United States v. Golston*, 2024 WL 149603, at *5 (S.D.N.Y. Jan. 12, 2024); *United States v. D'Angelo*, 2023 WL 9056404, at *4 (S.D.N.Y. Dec. 31, 2023); *United States v. Williams*, 2023 WL 8355891, at *3 (S.D.N.Y. Dec. 1, 2023); *United States v. Fayton*, 2023 WL 8275924, at *5 (S.D.N.Y. Nov. 30, 2023); *United States v. Nelson*, 2023 WL 6520378, at *3 (S.D.N.Y. Oct. 4, 2023); *United States v. Craft*, 2023 WL 6215326, at *3 (S.D.N.Y. Sept. 25, 2023); *United States v. Davila*, 2023 WL 5361799, at *2 (S.D.N.Y. Aug. 22, 2023); *United States v. Hampton*, 2023 WL 3934546, at *12 (S.D.N.Y. June 9, 2023); *United States v. Barnes*, 2023 WL 2268129, at *2 (S.D.N.Y. Feb. 28, 2023); *United States v. King*, 634 F. Supp. 3d 76, 83 (S.D.N.Y. 2022).

## CONCLUSION

Aramboles's motion to dismiss the indictment is therefore denied. The Clerk of Court is directed to terminate Dkt. 12.

SO ORDERED.

Dated: February 27, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge